### IN THE

# SUPREME COURT OF THE STATE OF GEORGIA,

# AT AMERICUS,

## JULY TERM, 1854.

Present—JOSEPH H. LUMPKIN,
EBENEZER STARNES, } Judges.
HENRY L. BENNING.

---

No. 59.—WILLIAM HOWARD and others, plaintiffs in error, *vs.* GEORGE W. CRAWFORD, for use, &c. defendants in error.

[1.] Our Act of 1799, authorizes suit upon the Sheriff's bond, for and on account of the misconduct of the Sheriff, or of the Deputy Sheriff, *proper;* and not for the misconduct of a jailer.

[2.] The Statutes of 13 *Edw. I, ch.* 2, and 1 *Rich. II, ch.* 12, are not of force in the State of Georgia.

[3.] The plaintiff is not put upon proof of a Sheriff's bond, whether it strictly conforms to the Statute or not, if no plea of *non est factum* be filed on oath. If such bond be made payable to the Governor and his successors in office, it is payable to the officer and not to the individual; and coming from the custody of the Clerk, with whom it was deposited, as the agent of such officer, for the purposes of suit upon it, (it is, in this respect, at least, conformable to the Statute,) and may be sued by any successor of such officer, without assignment.

[4.] The Sheriff cannot defend himself against an action of escape, by showing that the process under which the arrest was made, was irregular, though he may, where it is void.

[5.] When a witness states, that while he was at breakfast, a prisoner, who was in custody of the Sheriff, "made his escape", the fair inference is, that the prisoner fled from the custody of the Sheriff, against the consent of the latter.

[6.] Previous to the Act of 1853, it was not error in the Court to admit a statement made by a witness, which, by itself, might be objectionable, but which was explained by other testimony, so that it could not operate to the prejudice of the party, against whom it was offered.

[7.] To sustain an objection, that according to the evidence, it did not appear that a witness, whose testimony (the objection alleged,) had been taken, *de bene esse*, was unable to attend Court, it must appear, by the record, that the testimony was taken *de bene esse*.

Debt, on Sheriff's bond, in Baker Superior Court. Tried before Judge PERKINS, April Term, 1853.

This was an action against the sureties upon a Sheriff's bond, for the escape of a prisoner, in final execution for debt.

Defendants pleaded, among other things, 1st. That the defendant in *ca. sa.* was insolvent, at the time of the arrest and escape, and plaintiff was not damaged thereby. 2nd. That plaintiff should have sued the Sheriff first, before proceeding against his sureties. 3d. That the Acts of 13 *Edw. I*, and 1st *Rich'd II*, in reference to escapes, were not in force in Georgia.

The Court, on motion, struck out these pleas, as insufficient, in law, and this decision is assigned as error.

The bond offered in evidence, did not bind the sureties for the acts of the deputies of the Sheriff. It had more than *two* sureties, and was attested by only *two* Justices of the Inferior Court. The counsel for defendant insisted that the same was not a Statutory bond; and as a common law bond, its execution and assignment must be proved. The Court admitted it in evidence, without proof, and this is assigned as error.

The plaintiff offered in evidence, the original *ca. sa.* without offering a return, which it was insisted should be entered thereon. Defendant objected, unless the whole went into evidence. And farther—that it differed from the judgment, in the amount

Howard and others *vs.* Crawford, for use, &c.

of the costs, there being no sum mentioned in the judgment, as amount of costs.

The Court over-ruled both the objections, and this is assigned as error.

The evidence showed that the jailer, on several occasions, took the prisoner to his house to take his meals, carrying him back to the jail, immediately thereafter. The final escape was made by means of a key, furnished to the prisoner from without, together with other aid, given by persons from without.

The Court charged the Jury, that if they believed the jailer permitted the defendant in *ca. sa.* to depart from the jail, for any purpose whatever, without the consent of the plaintiff in *ca. sa.* or the order of the Court, it was a *voluntary* escape, and defendants were liable; and that no recapture by the jailer or Sheriff, would excuse or return them; and they must find for the plaintiffs the amount of the debt, unless it exceeded the bond. In that event, they must find the amount of the penalty on the bond. And farther, that the insufficiency of the jail, was no excuse for the Sheriff or his sureties.

To all of this charge, defendants excepted, and have assigned error thereon.

Other errors were assigned, on points not very material, which will appear in the opinion of the Court.

R. K. HINES and R. H. CLARK, for plaintiff in error.

S. T. BAILEY and B. HILL, for defendant.

*By the Court.*—STARNES, J., delivering the opinion.

This was an action on a Sheriff's bond, for an escape, brought by authority of our Judiciary Act of 1799.

The only acts which, according to the view we take of the evidence in this case, can be relied upon as constituting an escape, are the acts of the jailer, (William Kendrick,) unless his

VOL. XV. 54

acts, by implication, are. held to be those of the Sheriff, or un-less the latter be held liable for constructive negligence. ·

We hold, of course, that misconduct of the Sheriff, may con-sist as well in acts of omission or non-feasance, as in those of commission, misfeasance or malfeasance.    For all such acts, he and his sureties may undoubtedly be held liable, on his bond. But in our opinion, the misconduct for which suit may be brought upon the bond of the Sheriff, in contemplation of our Statute of 1799, was the personal and direct misconduct of that officer, and not the misconduct of the jailer, for which the Sheriff was liable, by 14 *Edw. III, ch.* 10; nor yet, that con-structive negligence, which was imputed to him by exposition of the Statutes, 13 *Edw. I, ch.* 2, and 1 *Rich. II, ch.* 12.

[1.] In the first place, we base our opinion upon the terms of the Act itself.

That Act provides, that the bond which every Sheriff is re-quired to give, may be sued "for the satisfaction of the public, or persons aggrieved by the misconduct of the Sheriff or his deputy".    That the under Sheriff, or deputy, *proper*, and not any other sub-agent, as a Jailer, Constable or Bailiff, was here intended, we think, is manifested by the context, and espe-cially by the reference which very soon follows this provision, viz: that "in case of the death of the said Sheriff, the deputy or deputies shall continue in office, unless otherwise specially removed, and execute the same until another Sheriff be ap-pointed and qualified," &c.    The office here spoken of seems, without doubt, to be the office of Sheriff, and he who is to continue in it, is, of course, the deputy, *proper*. . He is obvi-ously the same officer, who is referred to in the clause first quo-ted by us.    It is *his* misconduct, therefore, which is contem-plated, and not that of any other subordinate.

If this be so, and the Act thus expressly, and in terms, makes the sureties liable for the misconduct of the under Sheriff, it would seem that it should not have left their liability for the acts of the jailer, to implication.    The act of the jailer was cer-tainly no more the act of the principal, than was the act of the under Sheriff; and yet, the latter was inserted by name, in or-

der that the bond might be sued for his misconduct. Indeed, if the omission of the jailer's name was not intentional, it would appear to have been more reasonable, that he should have been named, than the Deputy Sheriff. We see in the 49th section of the Act, where it was intended to declare a liability of Jailers, Constables and other subordinates of the Sheriff, on account of the escape of prisoners, that they were specially named. To the section, then, which we have been considering, is not the maxim, *expressio unius, exclusio est alterius*, entirely applicable? This view of the matter is strengthened by the consideration, that the liability of the securities is here in question, and that is one *stricti juris*.

In the next place, there are strong reasons, arising out of circumstances peculiar to our legislative and social system, which make it proper that the Legislature should not have authorized a suit upon the bond, on account of the misconduct of the jailer. The following are some of these reasons:

By our laws, the Inferior Court has the erection and repairing of jails under its control, and the Sheriff has no authority in this respect.

By our laws, he is not authorized to remove the debtor, because of insufficiency in the jail, though he may so remove him to the jail of an adjoining county, if there be no jail in his county. And it seems to have been always considered the requirement of our laws, that the Sheriff should confine a debtor-prisoner in a jail.

By reason of the economical and republican, political and municipal system which prevails in this country, we have but few of those strong and massive buildings erected for the purpose, or which may be converted into jails. And in the nature of things, that degree of security, in the detention of prisoners, which might be effected by the Sheriff in England, cannot be here obtained.

By our laws, the Sheriff is not required, as in England, to be possessed, (and, indeed, it would be impossible that he should be so everywhere in our State,) of large and valuable real estate in his county, capable of going to all necessary ex-

penses, in insuring the security of prisoners, and of responding to all losses which might arise, from default or misconduct of his subordinates.

These are all considerations, why the Legislature should not have held the Sheriff's sureties liable for the misconduct of the jailer.

As we have already suggested, according to the record before us, there was no escape with the consent of Sheriff Howard, or Deputy Kenton; and, therefore, no voluntary escape personally permitted by them. The only thing like a direct escape from the Sheriff, was that which occurred soon after the arrest, and before the debtor was taken to prison; but the prisoner was recaptured, and the Sheriff thus saved from liability.

If there was any other act, for which he may be made responsible, as for a voluntary escape, it was that conduct of the jailer, which suffered the prisoner to go with him and eat his dinners at the jailer's house; and on one occasion, for a few minutes, to be out of his sight, in consultation with, and in charge of his counsel. It is very plain, that this was not keeping the debtor *in salva et arctura custodia ;* and, in some form of proceeding, the Sheriff may, perhaps, be held liable for the same. But as it was the conduct of the jailer and not the Sheriff, we hold that suit cannot be maintained, on this account, upon the bond.

Neither, in our opinion, can suit be maintained upon the bond, for a negligent escape. It is our opinion, that the misconduct of the Sheriff, contemplated by the Act of 1799, was his, or his Deputy's direct, personal misconduct; and not that constructive negligence, which is imputed to the Sheriff, by virtue of the aforesaid Statutes of *Edw. I and Rich. II*, in all cases of escape, even though the same were by an irresistible mob; or by fire, other than lightning; or by any other means, than the act of God and the King's enemies.

In giving this construction to our own Statute, we are influenced by the considerations which we have already specified, as reasons why the Legislature may have intended to exempt

the sureties of the Sheriff, from liability for the acts of the jailer; and also, by the fact that, by our Constitution, the bodies of debtors cannot be imprisoned, after they have made a full discovery of their property; and that arrest upon *ca. sa.*, is not a satisfaction of the debt; as well as by the fact, that, in our State, the property, both real and personal, of the debtor, is subject to execution.

The force of these latter considerations, will be more strongly felt, when we shall presently dwell upon them, in discussing another point of this case.

On the whole, our conclusion is, that taking the case, as it is presented by the record, no recovery can be had upon this bond.

[2.] So far, our views have been presented, as though it were admitted that the Statutes of 13 *Edw. I, and* 1 *Rich. II,* were of force in the State of Georgia. It is not necessary, for the disposition of this case, as it now stands before us, that we should do so, but it is expected and desired of us, and we will, therefore, give the inclination of our minds on the subject, which is, that these Statutes are not of force in Georgia. We have not positive confidence in the view which we submit, for our examination of it, has been made at great disadvantage. We have been impressed strongly, however, with the following considerations:

The prominent elementary reason, for the stringent construction of these Statutes, which obtained in England, seems to have been, that the arrest of the debtor operated as a satisfaction of the debt, so far as to prevent the plaintiff in execution from having other recourse against the debtor, for the payment of the same. (*Hob.* 59. 2 *Tidd. P.* 1029. 8 *Durn. & E.* 123.) The language of the Court of Appeals, of Virginia, on this subject is, "it", (the law arising out of these Statutes,) "reasons in this way—the body is the creditor's satisfaction. When it is once taken, he can have none other". *Perkins vs. Giles,* (9 *Leigh.* 400.)

Referring to the same subject, the Supreme Court of Pennsylvania, when considering the reasoning on which these Stat-

utes are based, says, "imprisonment of the body, on a commitment in execution, is, in contemplation of law, full satisfaction of the debt; and a right of which, the Sheriff cannot deprive the plaintiff without paying for it, not only its *actual* but its *legal* value.   This right is the creditor's property, and cannot be taken from him at a less price than the law has set upon it.   Such, in this respect, is the reasoning of the law, which, though artificial, is conclusive", &c.   *Wolverton vs. The Commonwealth, for use, &c.*, (7 *Serj. & R.* 278.)

But this is changed by our Constitution and Laws.   By the 7th section of the 4th art. of our State Constitution, imprisonment for debt, as it existed in England, is abolished.  And, by the Act of 1800, passed by authority of this section of our Constitution, the debtor has but to make a full and fair disclosure of his property, and he is released from imprisonment.

By our laws, too, if the plaintiff find his execution against the body ineffectual, he may withdraw it, and sue out execution against the goods, so that the arrest of the debtor's body is not, in our State, a satisfaction of the debt.   And by those laws, even the discharge of the debtor, after arrest, by the plaintiff, is not a satisfaction of the debt.

In the next place, in consequence of those feodal principles in the laws of England, which prohibited the alienation of, and encumbering the *fief* with the debts of the owner, a judgment did not always bind the lands of a debtor.   Copy-hold estates were never so bound, and only a moiety of freehold estates. It became, therefore, exceedingly important to the plaintiff in execution, that he should be enabled to coerce payment from a reluctant debtor, by holding his body in custody.   He might have no personal estate, and yet be possessed of a large and valuable interest in lands, which could not be taken in execution.   In such case, the creditor's right to take and hold the body, would, indeed be, if the debtor were unwilling to pay, "his property"; and it would seem not unreasonable, if he were deprived of this right by the Sheriff, that the latter should pay for it "its *legal* value"—should become *debitor ex delicto*.

But, by our Judiciary Act, the judgment is made to bind all the property of the defendant; and by virtue thereof, and of subsequent legislation, execution may issue, and be levied on the estate, both real and personal, of the debtor.

The imprisonment of the debtor, then, in our State, has not the same value which it had in England, when these Statutes were construed by the Courts.

If this be so, and if the reasons influencing the enactment of these Statutes, be such as the learned Judges, whose opinions we have quoted, suppose, by force and virtue of our Constitution, and the laws to which I have referred, the reasons of these Statutes having been caused to cease, the Statutes, themselves, have been, in effect, repealed.

It was urged, in the argument of this case, that the 49th section of the Act of 1799 provided, that Sheriffs, Jailers, &c., should be "liable to all actions, penalties and disabilities, whatsoever, which they or either of them may incur, for and on account of the escape of prisoners, &c., in the same manner as they have heretofore been liable by laws of force in this State"; and that this was a distinct legislative recognition of these Statutes, of *Edward* and of *Richard*, as at that time of force in our State.

The strength of this position, depends altogether upon the fact, that these Statutes had not been affected by the constitutional provisions to which we have referred. If they had been, in the way we have pointed out, then no legislative recognition could give them vitality. But the truth is, as we understand it, that this provision of the Act of 1799, as above quoted, was designed only to say, that by any previous provision of the Act, such as requiring bond, &c., the Legislature had not intended to change the liability of the Sheriff for escapes, &c., under any law then existing in the State; and was not intended to re-enact, or recognise any particular Statute which had been of force in the State.

It was also insisted, that the judgment, in this case, was a decree in Chancery; and that it, consequently, came under the provisions of the Statute 5 *Anne, ch.* 9.

We think that this Act was intended to apply strictly to an arrest, upon a decree issuing from Chancery, directing a sum of money to be paid; and not to an execution issued upon a decree, as under our system.    To an arrest upon such an execution, we think the Statutes of *Edward* and of *Richard*, are applicable.    But be this as it may, the Statute of *Anne* was enacted for the purpose, simply, of placing the plaintiff, in a decree in Chancery, upon the same footing, in his remedy against the Sheriff, for an escape, as he would have occupied, if his judgment had been at Common Law, by virtue of the Statutes of *Edward* and of *Richard;* and the reasoning which we have employed, applies as well to the Statute of *Anne*, as to these Statutes.

To this reasoning, if we superadd some of the considerations mentioned in another part of this opinion—if we reflect, that in our State, the Inferior Court has the building and repairing of the jail, and not the Sheriff; that he cannot even remove a prisoner to the jail of an adjoining county, because of the insufficiency of the jail in his own county; that he is not required (as in England) to be possessed of valuable real estate, and capable of protecting himself against loss, by escape of prisoners, by having the jail repaired at his own cost; that in our State, there are but few strong and massive buildings erected for the purpose, or which may be converted into jails; and that the Sheriff is required to confine the debtor in a jail, it must appear a rule of cruel and oppressive hardship, which seeks to hold him liable to the full amount of the debt, for the escape of a prisoner, when he had done all that was reasonable and proper, to insure his safe custody—when, perhaps, by reason of the unsubstantial structure which the Inferior Court had erected, (and it is well known that many such are to be found in our State,) the prisoner had been rescued by a mob of his friends, sufficient to have shouldered the flimsy building, and have carried it, with him, out of the county.

We should not take leave of the matter, however, without remarking, that, in our opinion, this subject presents a field for judicious legislative interference—for legislation which shall

accurately, and with certainty, fix and protect the rights of the creditor, and yet hold the Sheriff to nothing but a just and reasonable responsibility.

[3.] When the bond, in this case, was offered in evidence, objection was made, that there had been no proof of execution and delivery, or of assignment to the plaintiff, which it was insisted, was necessary, as it was not sufficiently in conformity with the Statute to make it a statutory bond.

There was no plea of *non est factum* filed, as our law requires, and proof of execution, &c., was unnecessary, according to our Statute. *Stephens et al. vs. Crawford,* (1 *Kelly,* 574.)

No assignment was needed. Whether the bond, in all its features, was in conformity with the requirements of the Statute or not, it was, at all events, made payable to George R. Gilmer, Governor, &c., and to his successors in office, and was delivered to the Clerk, (from whose custody it came,) as the agent of the Governor, that it might be sued upon, for the benefit of any person aggrieved by the misconduct of the Sheriff. It was, as it were, made payable to the officer, and not to the person, George R. Gilmer—(in this respect, at least, it was in conformity with the Statute,) and might be sued upon by any successor to Governor Gilmer, in the office of Governor, without assignment. *Stephens et al. vs. Crawford, Gov. &c.,* (1 *Kelly,* 574.)

The objections to the order of the Superior Court, which was offered in evidence, are not tenable. A reasonable construction of that order, shows that it was intended to be a permission to sue the bond; and if it were a permission to sue, it was not irrelevant.

[4.] Two objections were made to the *ca. sa.* when it was offered: 1. That there was a return which had not been entered on it, and which should have been indorsed, and the instrument ought not to be admitted, except in connection with it. 2. The *ca. sa.* did not correspond with the judgment.

As to the first of these objections, the record does not fur-

nish us with such intelligible facts as will enable us to form any opinion thereon.    Nor was this matter distinctly explained in the argument.

As to the second objection, the variance was an irregularity of which the Sheriff could not avail himself, in defence of an action for escape; as it did not render the process void.    If the effort had been made to take advantage of it, on the ground that the allegation and proof did not correspond, it was amendable.

[5.] In relation to the objection which was made to the testimony of Joseph Shores, our opinion is, that it is a fair inference, from what the witness says, as to the escape of Saunders, while he (the witness) was at breakfast, that Saunders fled from the custody of the Sheriff, against his will and consent; and that he means to state this fact, and not to give a legal conclusion, when he says he "made his escape".    It may be said, too, perhaps, that this evidence is not material, as the escape was made while the Sheriff and the debtor were on their way to prison, before the debtor had been imprisoned, and there was a recapture.

[6.] The objection to Boon's testimony, which was urged before us, was, that the witness spoke of there having been "some mystery and speculation", as to the escape of Saunders. This statement was objectionable by itself, but when considered with all the testimony before the Jury, and explained by it, it amounted to little or nothing, one way or the other, and could hardly be considered as prejudicial to the defence; and as this case was tried before the Act of 1853, it was not error in the Court to admit it.

[7.] As to Charles Miller's testimony, there is nothing in the record to show that it was taken *de bene esse*.    This was stated in the argument, but it has not been made to appear by the record.    We cannot, therefore, entertain any objection, to the effect that the evidence did not show he was unable to attend Court.    The evidence certainly does not show this— neither does that before us, show that it was taken *de bene esse;*

and there we leave it.   We are required to decide cases by the record.